United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FLORENCE LAUREL ANDERSON,

          Petitioner,

    v.

JEFFREY BEARD, Secretary of the
California Department of Corrections and
Rehabilitation, *et al.*,

          Respondents.

_____/

No. C-14-2468 EMC


**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

**(Docket No. 1)**

## I.   INTRODUCTION

Petitioner Florence Laurel Anderson seeks federal habeas relief from her state convictions of first degree murder and second degree burglary.  Anderson claims that her constitutional rights to due process, equal protection, and effective assistance of counsel were violated by the state courts.  Having reviewed the parties' briefs as well as the underlying record, the Court concludes that Anderson is not entitled to habeas relief based on the claims presented.  Accordingly, the Court **DENIES** Anderson's petition for writ of habeas corpus.

## II.   BACKGROUND

A.   Procedural History

In 2002, a Humboldt County Superior Court jury convicted Anderson of first degree murder and second degree burglary.  Clerk's Transcript 367-69; *see* Cal. Penal Code §§ 187, 189, 190(a), 459, 460(b), 461(b).  The court subsequently sentenced her to twenty-seven years to life in prison.  CT 401-403.

**United States District Court**
For the Northern District of California

1    Anderson was tried with co-defendant Michael Jared Lane, who was also convicted of first

2    degree murder and second degree burglary.[1]  A third defendant, Michael Thomas Gorman, was tried

3    separately and similarly convicted of the same offenses.  *See Gorman v. Clay*, No. C-07-2883 SBA

4    (PR), 2010 WL 890168, at *1 (N.D. Cal. 2010) (order denying habeas corpus).

5            The California Court of Appeal affirmed Anderson's convictions on direct review in 2003.

6    *People v. Anderson*,  No. A099476, 2003 WL 22977571, at *16 (Cal. Ct. App. 2003).  Anderson

7    then filed a petition for writ of habeas corpus in Humboldt County Superior Court, which was

8    denied in May 2013.[2]  Docket No. 1-2 at 1.  In November 2013, the California Court of Appeal

9    summarily affirmed the denial of Anderson's state habeas petition.  Docket No. 1-5 at 2.  The

10   California Supreme Court denied review without comment, and Anderson timely filed this petition

11   for federal habeas relief on May 29, 2014.  Docket No. 1 (Anderson's Petition for Writ of Habeas

12   Corpus).

13   B.     Factual History

14           Evidence presented at trial demonstrated that on April 3, 2001, Anderson and co-defendant

15   Michael Lane planned to kill and rob Bruce James, who was staying at a motel in Eureka,

16   California.  Anderson was convicted of first degree murder based on a felony murder theory.  *See*

17   Reporter's Transcript 1407:7-9.  The prosecution's primary witnesses were Gordon Combs and

18   Amber Ladue.  Anderson and Lane were staying with Combs at the time of the incident, and Ladue

19   lived in the same building.  *Anderson*, 2003 WL 22977571 at *1.  Anderson, Lane, Combs, and

20

21

22           [1] In addition, Lane received an enhancement for use of a knife and the special circumstances
23   of committing murder during the course of a burglary and robbery.  Reporter's Transcript 90-92.

24           [2] Anderson filed *in pro per* the petition for writ of habeas corpus in January 2005 and was
     appointed counsel in June 2005.  The court continued the case until 2011 when Anderson retained
25   new habeas counsel.  In 2012, Anderson, in conjunction with the Humboldt County district attorney,
     filed a petition to resolve the writ of habeas corpus through a stipulated agreement to a sentencing
26   modification.  The stipulated agreement would have decreased Anderson's sentence to seventeen
     years.  In coming to this agreement, the district attorney reviewed documentation that Anderson was
27   suffering from intimate partner battering at the time of her offense and that her conduct had been
     exemplary in prison.  The superior court denied both the petition for writ of habeas corpus and the
28   petition to resolve the petition through stipulated agreement.  It reasoned that it could not "act as a
     substitute for the appropriateness of release on parole."  Petition at 4-5.

United States District Court

For the Northern District of California

1  Ladue frequently injected methamphetamine together. *Id.*; RT 67:10-12; 317:23-25. Combs's

2  testimony regarding the murder and robbery was summarized by the state appellate court as follows:

> At around 4:00 a.m., Combs was awakened by Lane and Anderson entering his apartment. The two were "stressed out," and Anderson was crying and looked "really upset" and very scared. Lane told Combs he had just killed someone at the Broadway Motel, describing the victim as "a nigger." Anderson said what happened made her sick to her stomach.
>
> Lane explained that his sister Rachel had told him the victim had $600, and that he and Anderson had gone to the motel to rob him, with Anderson posing as a prostitute and Lane as her pimp. Both Lane and Anderson recounted that, once in the motel room, Anderson acted like she was going to orally copulate the victim but maced him instead. The victim started swinging in response, they added, and Lane stabbed him about seven or eight times. Lane remarked that the victim pleaded: "Please don't. You're killing me." They only got $46 from the victim.
>
> At Combs's apartment, Lane still had the knife. He put his and Anderson's clothes in a bag on the shelf and said they needed to get rid of the clothes because they were bloody.

14  *Anderson*, 2003 WL 22977571 at *2. Combs also testified he was concerned that Lane would beat

15  Anderson, and noted that she sometimes seemed afraid of him. Although he had known Anderson

16  for about two years, he had never heard she was a prostitute. *Id.* at *1-2.

17         Ladue testified that Lane and Anderson asked to borrow a knife a few hours before the

18  murder. *Id.* at *2; RT 73:26-27. Ladue testified that on the day after the murder, she drove

19  Anderson and Lane to dispose of their bloody clothes and the murder weapon. *Id.*; RT 119:14-16;

20  188:1-3. Ladue also testified that Anderson told her that someone had been killed and that Ladue

21  "would be next" if she did not keep quiet about the murder. *Id.*; RT 121:15-16.

22         In addition to Combs's and Ladue's testimony, the prosecution presented testimony from

23  Anderson's cell mate, Nicole Thies.[3] Thies testified that Anderson described initiating a sex act

24  with victim and then seeing Lane barge into the room and stab him from behind. *Anderson*, 2003

25  WL 22977571 at *3; RT 723:1-7. Thies further testified that Anderson admitted to her that she was

26  not actually a prostitute, but then requested Thies falsely testify that Anderson was a prostitute. *Id.*;

---

27

28         [3] Thies was Anderson's cell mate following Anderson's arrest on April 10, 2001. *Anderson*, 2003 WL 22977571 at *3.

United States District Court

For the Northern District of California

1    RT 594:16-24.  Finally, Thies testified that she had obtained a letter from Lane intended for

2    Anderson.  In the letter, Lane accused Anderson of "thinking of talking" to the authorities and

3    warned that if she did so, he would have to tell the truth and they would both get life.  He wrote,

4    "We'll both be okay if you stick with the truth of prostitution."  *Id.*; RT 715:15-24.

5         Anderson presented three witnesses to corroborate her defense that she had gone to the motel

6    room only to commit an act of prostitution.  *Anderson*, 2003 WL 22977571 at *3.  Margaret Mace, a

7    Eureka sex worker, testified that she had worked with Anderson on several occasions.  Nathan

8    Vallot testified that he had hired Anderson as a prostitute a number of times.  And Anderson's

9    mother, Alisia Short, testified that Lane disapproved of Anderson's prostitution but that he would

10   accompany her to make sure that she was safe.  *Id.*; RT 767:12-14; 759:9-10; 781:5-11; 782:4-7.

11        Anderson also presented evidence that she had been physically abused by Lane over the long

12   course of their relationship.[4]  *Anderson*, 2003 WL 22977571 at *3.  Sheri Johnson, project director

13   of a local domestic violence prevention program, testified as an expert on battered women's

14   syndrome (BWS), now commonly referred to as "intimate partner battering."  *Id.* at *4.  Johnson

15   testified about the cycle of abuse that generally occurs in cases of BWS.  *See* RT 847.  Based on a

16   review of Anderson's history, Johnson testified that Anderson suffered from BWS and that

17   Anderson had experienced physical, psychological, and sexual abuse at the hands of her male

18   partners.  RT 853:18-22.  Johnson further testified that given Anderson's history of abuse, she would

19   not be likely to contradict Lane's statements to Ladue and Combs about her involvement in a crime.

20   RT 846:12.  Specifically, Johnson testified that Anderson would be afraid of physical repercussions,

21   and that Anderson's failure to contradict Lane's inculpatory statements was consistent with the

22   behavior of someone suffering from BWS.  *Anderson*, 2003 WL 22977571 at *4; RT 856:14-18.

23        Anderson also testified on her own behalf at trial.  She stated that she thought she was going

24   to the hotel room to perform a sex act in order to get money from the victim to buy more drugs.

25   *Anderson*, 2003 WL 22977571 at *5.  At James's motel room, Gorman (the third co-defendant who

26   was tried separately) introduced Anderson to James as "the party girl" and left.  RT 914:16.

27   ─────────────────

28        [4] Anderson testified that she and Lane considered themselves "unofficially married."
*Anderson*, 2003 WL 22977571 at *4.

United States District Court
For the Northern District of California

1  Anderson and Lane entered the room.  While she sat with James on the bed, Lane went into the

2  motel room bathroom to snort methamphetamine and stay out of the way while Anderson started to

3  perform a sex act on James.  *Anderson*, 2003 WL 22977571 at *5; RT 917:16-21.  After she got into

4  an argument with James over the cost of the sex act, Anderson testified that James pushed her and

5  Lane ran into the room.  *Id.*; RT 921:18; 924:19.  Anderson testified that she thought Lane was

6  punching James in the back.  She heard James say, "You're killing me," and James fell against the

7  wall.  *Id.*; RT 925:20.  When Anderson found out that Lane had stabbed the victim, she asked him

8  why he did it.  In response, Lane pushed Anderson and told her to shut up.  *Id.*; RT 929:24-26.

9      Anderson testified that after leaving the motel room, she and Lane returned to Ladue's

10  apartment where Gorman was waiting with another friend, Shaun Harrison.  *Anderson*, 2003 WL

11  22977571 at *5.  Anderson testified that Gorman was upset and wanted to return to the motel room

12  because she and Lane had not brought back any money.  Anderson testified that she did not want to

13  go back to the crime scene, but Lane insisted, "telling her that if she 'fucked it up' he would . . . kick

14  her ass."  *Id.*; RT 924:24-27.  Gorman, Lane, Harrison, and Anderson then broke into the motel

15  room through the bathroom window, searched James's body, and took various items.  *Id.*; RT

16  938:17-20.  For this conduct, Anderson was charged and ultimately convicted of second degree

17  burglary.

18      Anderson stated that she did not say anything to contradict Lane's statements relaying the

19  course of events to Ladue and Combs (*i.e.*, that he and Anderson had originally gone to the motel to

20  rob the victim), because she was afraid of Lane.  *Anderson*, 2003 WL 22977571 at *5; RT 947:11-

21  12.  She further testified that Lane had already been violent with her when he forced her to return to

22  the motel room to burglarize it.  *Id.*  According to Anderson, when she and Lane went to dispose of

23  their clothes the following day, Lane told her to shut up and head butted her in the face.  *Id.*; RT

24  957:13-16.  Anderson denied asking Ladue for the knife, threatening Ladue, planning to hurt James,

25  or knowing that anyone would hurt James when she went to the motel room.  *Id.*; RT 983:11; 962:2-

26  3.  Anderson also denied Combs's testimony about using mace, and denied telling Thies about

27  going to the motel room with the intent to rob James.  *Id.*; RT 974:2-3; 1093:1-3.

28

United States District Court

For the Northern District of California

### III.   DISCUSSION

Anderson alleges she is entitled to habeas relief because: (1) the trial court violated her due process right to a fair trial by denying the admission of evidence of intimate partner battering and its effects for all relevant purposes; (2) she was denied the right to effective assistance of trial counsel where counsel failed to introduce evidence of intimate partner battering for all purposes, by counsel's failure to renew Anderson's motion to sever her trial from that of her co-defendant, and by counsel's failure to raise a duress defense to the second degree burglary charge; (3) she was denied the right to effective assistance of appellate counsel by counsel's failure to raise an ineffective assistance of trial counsel claim based on these issues; and (4) the state courts violated her right to equal protection by not applying California Penal Code section 1473.5 to her case.  Petition at 6-7.

A.    Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this Court may entertain a petition for writ of habeas corpus brought by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  This Court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  Additionally, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

United States District Court

For the Northern District of California

1   applied clearly established federal law erroneously or incorrectly.  Rather, the application must also

2   be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry

3   should ask whether the state court's application of clearly established federal law was "objectively

4   unreasonable." *Id.* at 409.  Finally, habeas relief is warranted only if the constitutional error at issue

5   had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v.*

6   *Johnson*, 532 U.S. 782, 796 (2001).

7   B.    Anderson's Claims

8         1.    The Trial Court's Limitation of Intimate Partner Battering Evidence

9         Anderson claims that the trial court violated her due process right to a fair trial by failing to

10   permit the introduction of evidence of intimate partner battering (IPB) for all allegedly relevant

11   purposes.  Petition at 6.  In conversation with Ladue and Combs, Lane described going to the

12   victim's motel room with Anderson posing as a prostitute (with the shared intent to rob the victim)

13   and later killing the victim.  *See Anderson*, 2003 WL 22977571 at *2; RT 633:19-23; 691:3-17.

14   "These statements were ruled admissible as adoptive admissions by Anderson," who was present

15   when Lane made the statements.  *Anderson*, 2003 WL 22977571 at *5; *see* Cal. Evid. Code § 1221

16   ("Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the

17   statement is one of which the party, with knowledge of the content thereof, has by words or other

18   conduct manifested his adoption or his belief in its truth.").

19         The trial court admitted evidence of IPB for the limited purpose of explaining why Anderson

20   did not counter Lane's statements implicating her in the murder and robbery.  It did not admit

21   evidence of IPB for all purposes, however, because it found that there was no evidentiary foundation

22   on which such evidence could be admitted to explain Anderson's other behavior.  RT 693:8-26.

23   Indeed, Anderson's trial counsel agreed with the Superior Court that the admissibility of the IPB

24   evidence should be limited solely to explain or rebut Anderson's alleged adoptive admissions.  RT

25   632:4-10, 21-25; *see also Anderson*, 2003 WL 22977571 at *6 (statement of trial counsel that "I

26   would be intending to introduce that evidence on the affect [sic] that battered women's syndrome

27   may have on Miss Anderson's behavior when confronted with the-with the accusations or the

28

United States District Court

For the Northern District of California

1   statements made by Mr. Lane.  I didn't intend to go beyond that-that area of relevance") (emphasis

2   omitted).

3          The state appellate court found that the trial court's limitation of the IPB evidence was

4   proper for two reasons.  First, the appellate court found that Anderson had waived this claim,

5   because trial counsel expressly limited the introduction of IPB evidence to the adoptive admissions

6   issue and specifically told the court that the evidence would not be offered for any other purpose.

7   As a result, the appellate court reasoned Anderson could not complain on appeal that "the evidence

8   was admitted only for the purpose requested."  *Anderson*, 2003 WL 22977571 at *6.  Second, after

9   reviewing the merits of Anderson's evidentiary claim, the Court of Appeal concluded that, aside

10  from Anderson's failure to contradict Lane's incriminating statements, there were no issues in the

11  case to which IPB evidence was germane.  *Id.*; *see* Cal. Evid. Code § 1107.  The Court of Appeal

12  also rejected Anderson's claim that the trial court's evidentiary ruling violated her federal

13  constitutional right to a fair trial or to present a defense.  *Id.*

14              a.      Anderson's Evidentiary Claim is Procedurally Barred

15         Habeas relief is not warranted here because Anderson's due process claim is procedurally

16  barred. A federal court will not review a question of federal law decided by a state court if the

17  decision also rests on an "independent and adequate" state law ground.  *Coleman v. Thompson*, 501

18  U.S. 722, 729-30 (1991).  If a state prisoner has defaulted a claim in state court pursuant to an

19  adequate and independent state ground, federal habeas review is barred unless the prisoner can show

20  "cause" for the default and actual prejudice as a result of the alleged violation of federal law, or

21  unless the prisoner can demonstrate that failure to consider the claim will result in a "fundamental

22  miscarriage of justice."  *Id.* at 750.

23         A state procedural bar is "independent" if the state court explicitly invokes the procedural

24  rule as a separate basis for its decision and if the application of the state procedural rule does not

25  depend on a consideration of federal law.  *Vang v. Nevada*, 329 F.3d 1069, 1074-75 (9th Cir. 2003)

26  (citing *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995); *Park v. California*, 202 F.3d

27  1146, 1152 (9th Cir. 2000)); *see also Harris v. Reed*, 489 U.S. 255, 265 (1989).  An "adequate" state

28  rule must be "firmly established and regularly followed."  *Walker v. Martin*, 131 S. Ct. 1120, 1127

United States District Court

For the Northern District of California

1  (2011) (quoting *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009)); *accord Dugger v. Adams*, 489 U.S.

2  410, 411 n. 6 (1989) (a state rule is consistently applied and well established if the state courts

3  follow it in the "vast majority of cases").

4         The state appellate court found that Anderson's evidentiary claim was waived because she

5  did not pursue the matter or object at trial.  Indeed, the Court of Appeal noted that Anderson's trial

6  counsel specifically agreed to admit IPB evidence solely to address the issue of Anderson's adoptive

7  admissions.  *Anderson*, 2003 WL 22977571 at *6.  The state appellate court explicitly invoked

8  California's contemporaneous objection requirement as a separate basis for its decision, and did not

9  depend on federal law in its application of the state procedural rule.  *See id.*  (concluding "that

10  Anderson's defense counsel voluntarily and expressly limited his offer of BWS evidence to the

11  adoptive admissions issue" and thus, "Anderson cannot now complain the evidence was admitted

12  only for the purpose requested"); *see Harris*, 489 U.S. at 265 (extending to habeas review the "plain

13  statement" rule for determining whether a state court has relied on an independent and adequate state

14  ground); *Vang*, 329 F. 3d at 1074-75 (A state procedural bar is "independent" if the state court

15  specifically invokes the procedural rule as a basis for its decision.); *Bennett v. Mueller*, 322 F.3d

16  573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where .

17  . . the state court simultaneously rejects the merits of the claim.").  The state procedural rule invoked

18  by the state court is well established, and the Supreme Court has recognized the validity of the

19  contemporaneous objection requirement as a bar to federal habeas review.  *See Wainwright v. Sykes,*

20  433 U.S. 72, 88 (1977) (describing the benefits of the contemporaneous objection requirement and

21  recognizing it as a valid bar to federal habeas review).

22         The state appellate court further suggested that Anderson's claim had been waived under

23  California's doctrine of invited error.  *Anderson*, 2003 WL 22977571  at *6 (reasoning that

24  "Anderson cannot now complain that the evidence was admitted only for the purpose requested").

25  The invited error doctrine is recognized as a valid procedural default that bars federal habeas review.

26  *See, e.g.*, *Leavitt v. Arave*, 383 F.3d 809, 832 (9th Cir. 2004) (recognizing that invited error doctrine

27  may be a valid basis for procedural default under habeas review where the state court clearly and

28  expressly invoked the invited error doctrine); *Miller v. Oberhauser*, 293 F.2d 29, 31 (9th Cir. 1961)

United States District Court

For the Northern District of California

(holding that a petitioner could not object on federal habeas review to the jury instruction he requested at trial). In this case, Anderson not only failed to object to the limitation on the IPB evidence, but in fact requested that the IPB evidence be admitted for a limited purpose (*i.e.*, invited the error she now complains of). Because the trial court granted Anderson's request to introduce the evidence for a limited purpose, she is not now entitled to habeas review of the state court's decision.

A petitioner may show cause for a procedural default by establishing constitutionally ineffective assistance of counsel, but attorney error short of constitutionally ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991). As discussed below, Anderson has not demonstrated that her counsel's performance was constitutionally ineffective and has, therefore, not shown cause as a result of ineffective assistance of counsel.

The state appellate court found that Anderson waived the evidentiary claim pursuant to an adequate and independent state rule, and it is procedurally barred on federal habeas review as a result. *Coleman*, 501 U.S. at 729-30 (1991).

        b.     <u>Anderson's Evidentiary Claim Fails on the Merits</u>

Even if Anderson's due process claim were not procedurally barred, it fails on the merits. Anderson bears the burden of demonstrating that the constitutional principle violated by a state's evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 47 (1996) (internal quotations and citations omitted). Federal habeas courts are not to review state court determinations of state law questions but are solely to determine whether or not a conviction violated the Constitution, treaties, or laws of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (reversing habeas grant based in part on Ninth Circuit's determination that evidence was admitted in violation of California law) (citing *Rose v. Hodges*, 423 U.S. 19, 21 (1975)). Further, a federal habeas court may "overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86,131 S. Ct. 770, 786 (2011)).

United States District Court
For the Northern District of California

Only "rarely" has the Supreme Court held that "the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Id.* (internal citations omitted). The Constitution prohibits exclusion of defense evidence under state rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 547 U.S. 319, 325-26 (2006). Well established state rules of evidence, however, "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.*

Anderson has not met her burden to demonstrate that the state court's evidentiary ruling resulted in the violation of her right to a fair trial or her right to present a complete defense. First, Anderson has not pointed to any Supreme Court precedent requiring admission of IPB evidence for all – or even any – purposes. Second, the state court's evidentiary ruling was not without legitimate purpose. *See Holmes*, 547 U.S. at 325-26 (The Constitution prohibits exclusion of defense evidence under state evidentiary rules that serve no legitimate purpose.) Evidence of IPB must be germane to an issue in the case in order to be admissible under state evidentiary law, and the purpose of allowing evidence of IPB is "to disabuse jurors of common misconceptions regarding victims of domestic violence." *Anderson*, 2003 WL 22977571 at *6 (internal citations omitted).

The state court found that there was no evidentiary basis under state law to admit the IPB evidence either to establish a duress defense or to prove that Anderson lacked the necessary intent to support her felony murder conviction. *Anderson*, 2003 WL 22977571 at *7; *see* Cal. Evid. Code § 1107. California Evidence Code section 1107(a) states that expert testimony is admissible regarding IPB and its effects, "including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence…." The foundation for admission of expert testimony regarding IPB is sufficient "if the proponent of the evidence establishes its relevancy and the proper qualifications of the expert witness." Cal. Evid. Code § 1107(b).

The state court began its analysis of Anderson's claim by explaining the purpose(s) and application of section 1107. According to the Court of Appeal, the purpose of allowing evidence of the effects of IPB "is to disabuse jurors of common misconceptions regarding victims of domestic violence." *Anderson*, 2003 WL 22977571 at *6 (citing *People v. Morgan*, 58 Cal. App. 4th 1210,

**United States District Court**
For the Northern District of California

1214 (Cal. Ct. App. 1997)).  "For example, such evidence might be germane to the credibility of a domestic violence victim's accusation of abuse, by explaining why a victim might subsequently recant or deny the abuse altogether."  *Id.* (citing *People v. Williams*, 78 Cal App. 4th 1118, 1129-30 (Cal. Ct. App. 2000)).  Or, IPB evidence might generally be relevant to a "claim of self-defense, by explaining how a typical abused woman may perceive a need to defend herself against an abusing partner."  *Id.* (citing *People v. Humphrey*, 13 Cal. 4th 1073, 1087 (1996)).  However, the Court of Appeal noted that "an expert witness on BWS may *not* testify as to the *particular* defendant's actual thoughts or intents at a given time."  *Id.* (citation omitted) (first emphasis added, second emphasis in original).

After presenting these general principles, the Court of Appeal found that aside from the adoptive admissions issue, there was no other issue to which IPB evidence would have been relevant under state law.  *Id.*  Because IPB evidence could not have been admitted under Penal Code section 1107 to explain Anderson's intent, it could not have been admitted for this purpose.  *Anderson*, 2003 WL 22977571 at * 6 (citing *People v. Erickson*, 57 Cal. App. 4th 1391, 1401 (Cal. Ct. App. 1997) (holding that the legislature did not intend to permit the use of IPB evidence to predict the actual state of mind of a defendant)); *see also* Cal. Evid. Code § 1107(a).  The state court further reasoned that there was no indication or evidence supporting an inference that Anderson was forced to go to the hotel room to commit the murder and robbery or that she went there out of fear of Lane.  Evidence of IPB, therefore, could not have been admitted to raise a duress defense even if Anderson had decided to pursue such a defense.  *Id.*  Thus, the state court concluded, "except for her failure to rebut Lane's incriminating statements to Ladue and Combs, there was neither evidence nor argument that Anderson did anything that required explanation, by BWS evidence, to disabuse the jury about misconceptions concerning battered women."  *Id.* at *8.

Further, evidence suggesting that Lane forced Anderson to pretend to perform a sex act for the purpose of a robbery would have been patently inconsistent with Anderson's actual defense at trial that she went to the motel room simply to commit an act of prostitution.  *Id.*; *see People v. Erickson*, 57 Cal. App. 4th 1391, 1401 (1997).  And although Anderson did testify at trial that Lane forced her to return to the crime scene to burglarize the victim's room, this evidence could not

1  support any defense to the murder charge, because the offense underlying the felony murder charge

2  (robbery) was completed by the time Anderson allegedly "involuntarily" returned to the hotel room.

3  *Id.* at 7 n. 7; *see* RT 933:5-7.

4       The record supports the state court's conclusion; the trial court's evidentiary ruling did not

5  result in a federal constitutional violation. *See Egelhoff*, 518 U.S. at 42 (noting that the accused

6  does not have "an unfettered right to offer evidence that is incompetent, privileged, or otherwise

7  inadmissible under standard rules of evidence") (quoting *Taylor v. Illinois*, 484 U.S. 400, 410

8  (1988)). Anderson has not met the heavy burden of demonstrating that "there is no possibility that

9  fairminded jurists could disagree" that the state appellate court's decision conflicts with the Supreme

10 Court's precedents. *Jackson*, 133 S. Ct. at 1992 ("It is settled that a federal habeas court may

11 overturn a state court's application of federal law only if it is so erroneous that there is no possibility

12 that fairminded jurists could disagree that the state court's decision conflicts with [the Supreme

13 Court's] precedents.") (internal citations and quotations omitted). Because the state court's

14 determination of a state law evidence question did not result in a constitutional violation, this Court

15 will not re-examine the state appellate court's decision on this claim. *See Estelle*, 502 U.S. at 67

16 (emphasizing that "it is not province of a federal habeas court to reexamine state-court

17 determinations on state-law questions").

18       2.       Ineffective Assistance of Trial Counsel

19       Anderson claims that she was denied her constitutional right to effective assistance of trial

20 counsel. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Specifically, Anderson claims

21 she received ineffective assistance where her counsel decided not to present IPB evidence for all

22 purposes, and where counsel did not renew Anderson's motion to sever her trial from that of her co-

23 defendant, Michael Lane. Petition at 7. Although state appellate counsel did not raise an ineffective

24 assistance of trial counsel claim in Anderson's opening brief on appeal,[5] the Court of Appeal

25 nevertheless addressed the merits of Anderson's ineffective assistance claim as to trial counsel's

26 failure to introduce IPB evidence for all purposes. *Anderson*, 2003 WL 22977571 at *6 n. 5. The

---

27

28       [5] Anderson's state appellate counsel did raise the issue in Anderson's reply brief. *Anderson*, 2003 WL 22977571 at *6 n. 5.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  state appellate court rejected Anderson's claim, finding she had established neither "incompetence

2  [n]or prejudice in her trial counsel's decision to offer the evidence only with respect to the adoptive

3  admissions issue." *Id.* (internal citations omitted).

4      In order to prevail on a Sixth Amendment ineffective assistance claim, the petitioner must

5  establish that: (1) trial counsel's performance fell below an "objective standard of reasonableness"

6  under prevailing professional norms; and (2) the petitioner was prejudiced by trial counsel's

7  deficient performance. *Strickland*, 466 U.S. at 687-88.  A federal habeas court must indulge a strong

8  presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

9  *Id.* at 689.  If the petitioner establishes that counsel's performance was deficient, in order to show

10  prejudice the petitioner must demonstrate that "there is a reasonable probability that, but for

11  counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694;

12  *see also Siripongs v. Calderon*, 133 F. 3d 732, 737 (9th Cir. 1998) (it is unnecessary for a federal

13  court considering a habeas claim of ineffective assistance of counsel to address the prejudice prong

14  of the *Strickland* test if the petitioner cannot establish incompetence under the first prong).  A

15  "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

16  *Strickland*, 466 U.S. at 694.

17      In analyzing ineffective assistance of counsel claims under Section 2254(d), a "doubly

18  deferential" standard of review is appropriate. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403

19  (2011); *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).  Under this deferential standard, "the

20  pivotal question is whether the state court's application of the *Strickland* standard was

21  unreasonable," not "whether defense counsel's performance fell below *Strickland*'s standard."

22  *Harrington,* 131 S. Ct. at 785.  Thus, the state court "must be granted a deference and latitude that

23  are not in operation when the case involves review under the *Strickland* standard itself." *Id.*  In

24  other words, a federal habeas court must use a standard of review that "gives both the state court and

25  the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (citing

26  *Pinholster*, 131 S. Ct. at 1403).

27      Here, the state court's application of the *Strickland* standard was reasonable.  Under the

28  doubly deferential standard established in *Harrington,* Anderson has not demonstrated that the state

United States District Court

For the Northern District of California

court applied the *Strickland* analysis unreasonably, nor has she overcome the strong presumption that trial counsel acted competently.  Anderson has the burden of demonstrating through evidence that trial counsel's performance was deficient.  *See Burt*, 134 S. Ct. at 17 (noting that "an absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance'") (quoting *Strickland*, 466 U.S. at 689).  Anderson has failed to meet that burden, because she has not produced evidence to overcome the presumption that trial counsel's conduct was within the range of reasonable professional judgment.  *See id.* at 17 (concluding that without any evidence demonstrating that counsel gave inadequate advice regarding withdrawal of guilty plea, there is strong presumption that counsel's performance was not deficient); *see also Gentry v. Sinclair*, 705 F. 3d 884, 899-90 (9th Cir. 2013) (ineffective assistance of counsel claim denied where petitioner presented no evidence to indicate why counsel's actions were unreasonable under the circumstances).

Anderson argues that trial counsel's decision not to introduce IPB evidence for all purposes was the result of counsel's ignorance and lack of preparation.  The record suggests otherwise: counsel appears to have made a reasonable and informed decision to introduce the evidence for the sole purpose of addressing Anderson's failure to rebut Lane's incriminating statements.  RT 632:23-25.  Although the trial court originally suggested that IPB evidence might not be admitted for any purpose, Anderson's trial counsel successfully convinced the trial court to admit IPB evidence as it related to the adoptive admissions issue, and cited relevant case law during the lengthy exchange.  *See* RT 630-37.  Anderson correctly notes that trial counsel did not object to the trial court's later decision to limit the IPB evidence to the adoptive admissions issue, but there is nothing in the record to suggest that this failure to object was the result of neglect or deficient performance, since trial counsel had discussed the issue with the trial court at length the previous day.  RT 691:2-12.

As discussed above, Anderson's defense theory was that she willingly went to the victim's room with the intention to perform a sex act for money.  Admitting IPB evidence suggesting that she went to the room intending to rob the victim, albeit under duress or threat of domestic abuse, would have tended to undercut this defense.  *Anderson*, 2003 WL 22977571 at *7.  This suggests that trial counsel made a reasoned and informed tactical decision in providing the IPB evidence solely to

United States District Court

For the Northern District of California

address the adoptive admissions issue in order to preserve her defense at trial.  *See Harrington*, 131 S. Ct. at 790 ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect.") (internal citations and quotations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123-125 (2009) (failure to show ineffective assistance of counsel where counsel made tactical decision not to pursue a defense after "thorough investigation of law and facts relevant to plausible options") (internal citation omitted).  This strategic decision, considered together with the state appellate court's finding that the IPB evidence would not have been admissible anyway except in relation to the adoptive admissions issue, indicate that trial counsel's offer of the IPB evidence for a limited purpose did not fall below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687; *see also Harrington*, 131 S. Ct. at 790 (recognizing that "although courts may not indulge 'post hoc rationalizations' for counsel's decision making that contradicts the available evidence of counsel's actions . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions") (internal citations omitted).

Anderson also argues that trial counsel was ineffective in not asserting a duress defense to the second degree burglary charge.  Petition at 19.  As discussed above, Anderson testified that Lane forced her to return to the hotel room to take more money from the victim after the murder and initial robbery had been committed.  *See* RT 933:5-7.  During closing argument, Anderson's trial counsel stated with regard to the second degree burglary charge: "I do not offer a defense to that count.  Clearly, Ms. Anderson knew that . . . people were going back to take property and she didn't [sic] participate in that, went back and held open a window.  Whether she wanted to do that or did that under some duress, I don't know.  But I would submit to you that you can find proof beyond a reasonable doubt that she committed that particular crime.  I don't think you can find proof beyond a reasonable doubt, based on these facts, that Ms. Anderson particularly had the specific intent to do these things."[6]  RT 1433:19-28.

---

[6] Based on this portion of transcript, the Court observes that counsel did not clearly waive a duress defense to the burglary charge, nor does it appear that he truly conceded guilt on this charge, as suggested by Anderson in her petition.

Anderson has not demonstrated that the state court applied the *Strickland* standard unreasonably in this instance.  The Supreme Court has held that "the law does not require counsel to raise every available nonfrivolous defense."  *Knowles*, 556 U.S. at 127.  Further, deference to trial counsel's tactical decisions during closing argument is appropriate because of the broad range of legitimate defense strategies allowed at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam) (holding that counsel's exclusion of some issues in closing did not amount to constitutional inadequacy where omission of issues could have been the result of tactical decision); *see also Harrington*, 131 S. Ct. at 790 (recognizing presumption that counsel's actions are result of tactical decision rather than neglect).  In this case, it is clear that trial counsel was aware that a duress defense was viable, and he did, in fact, bring that potential defense to the attention of the jury.  *See* RT 1433:19-28.  This suggests that trial counsel was not neglectful, but rather that he may have decided to strategically "admit" that Anderson was likely guilty of burglary while simultaneously noting the inadequacy of the evidence with regard to the far more serious charge of felony murder. *See United States v. Fredman*, 390 F.3d 1153, 1157-58 (9th Cir. 2004) (affirming validity of "confession and avoidance" tactic where counsel admitted the truth of some of defendant's more minor crimes in order to avoid diminishing his credibility when arguing that defendant was not guilty of the greater crimes).  Under *Strickland*'s deferential standard, Anderson has not demonstrated that trial counsel's performance was deficient or that the state court unreasonably applied the standard in evaluating trial counsel's performance.  *Strickland*, 466 U.S. at 687;  *see also Harrington,* 131 S. Ct. at 785.

Likewise, Anderson has not demonstrated deficient performance where her trial counsel chose not to renew Anderson's motion to sever her trial from that of her co-defendant Lane.  Petition at 7.  Anderson's trial counsel filed a motion to sever on the ground that if Lane's statements that implicated Lane and Anderson were admitted at trial, and Lane did not testify at trial, Anderson's right to confrontation would be violated.  CT 56.  The state argued that Lane's statements were admissible in a joint trial against Anderson under the adoptive admissions exception to the hearsay rule.  CT 75.  The trial court agreed with the prosecution and denied Anderson's motion to sever. CT 104-105; State's Exhibit E (Reporter's Augmented Transcript) at 1.

United States District Court

For the Northern District of California

The defendant's motion to sever was thoroughly briefed and does not indicate neglect on the part of trial counsel.  The trial court concluded that the admission of Lane's statements did not violate Anderson's confrontation rights under Supreme Court precedent, because at the time Lane made the statements, Anderson "was present, heard the statements and could reasonably have denied the accusation."  CT 105.  Given the trial court's denial of the motion, trial counsel could have reasonably concluded Anderson's motion to sever would not be successful if renewed and that his trial preparation should be focused on other tasks, such as presenting evidence to undermine the validity of Lane's incriminating statements as they pertained to Anderson.  *See Harrington*, 131 S. Ct. at 790*; see also Rupe v. Wood*, 93 F. 3d 1434, 1445 (9th Cir. 1996) (holding that "failure to take futile action can never be deficient performance").  In oral argument before the pre-trial court issued its ruling on the severance motion, trial counsel argued that the adoptive admission cure was inappropriate in part because Anderson was "subject to a very domineering and abusive type of behavior at the behest of Mr. Lane."  RAT 7:1-6.  He asserted that this fact coupled with Anderson's witnessing of a brutal murder would make it unreasonable to expect her to respond to Lane's statements.  RAT 16-25.  The pre-trial court did not specifically mention Lane's abuse of Anderson in its denial of Anderson's severance motion.  *See* CT 104-105.  It did hold, however, that Anderson was present and could reasonably have denied the accusation, thereby finding an adoptive admissions cure appropriate.  CT 105:1-2.  It was not unreasonable for trial counsel to conclude that additional evidence of abuse would have been unlikely to change the trial court's reasoning on the severance issue.  Trial counsel raised this issue in oral arguments, and the pre-trial court did not think it was sufficient to warrant severance of the trials.  *Id.*  Given the pre-trial court's rejection of the severance motion, it was not unreasonable for trial counsel to focus on undermining the adoptive admissions theory rather than re-submitting a motion to sever.  Put simply, the record suggests that trial counsel acted reasonably and that his decision not to renew the severance motion did not fall outside the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 687-88.  It was, therefore, not improper for the state appellate court to conclude under the *Strickland* standard that trial counsel's performance was not deficient.  *Harrington,* 131 S. Ct. at 785.  ("The pivotal

United States District Court
For the Northern District of California

1   question is whether the state court's application of the *Strickland* standard was unreasonable," not

2   "whether defense counsel's performance fell below *Strickland*'s standard.").

3       Because Anderson has not demonstrated that trial counsel's performance was deficient, there

4   is no need for the Court to consider the second prong of the *Strickland* analysis. *Siripongs*, 133 F.

5   3d at 737. But even if Anderson were able to demonstrate that trial counsel's performance was

6   deficient, Anderson cannot demonstrate prejudice. The record does not suggest that there is a

7   reasonable probability that the outcome of Anderson's trial would have been different but for trial

8   counsel's introduction of the IPB evidence only for a limited purpose or trial counsel's decision not

9   to renew Anderson's severance motion. *See Strickland*, 466 U.S. at 693. Because both the state trial

10  court and the appellate court found that there was no foundational basis for admitting IPB evidence

11  for any purpose other than to address the adoptive admissions issue, there is no indication that it

12  would have made a difference to Anderson's proceeding if trial counsel had attempted to introduce

13  the evidence for all purposes. Moreover, even if the IPB evidence had been admitted for all

14  purposes, the evidence of Anderson's guilt was substantial, and there is no reasonable probability

15  that the jury would have acquitted Anderson. *See id.* at 694.

16      Similarly, even if trial counsel had presented a more forceful duress defense to the second

17  degree burglary charge during his closing argument, there was still sufficient evidence to convict

18  Anderson of the charge. *See id.* (in order to show prejudice, the petitioner must show "there is a

19  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

20  would have been different."). Importantly, a fair reading of the trial transcript does not indicate that

21  trial counsel truly conceded guilt on the second degree burglary charge, and he did mention duress

22  as a potential defense in his closing. Furthermore, the jury heard testimony from Anderson that she

23  only returned to the motel room to burglarize it because she was afraid of Lane, and her counsel

24  consequently argued that she lacked the specific intent to commit the crime in his closing. Under

25  these circumstances, there can be no prejudice where the jury was in fact presented with the duress

26  defense and rejected it. Finally, because Anderson's severance motion was thoroughly briefed and

27  argued before the trial court rejected it, and because the evidence of Anderson's guilt was

28  substantial, it is not probable that the outcome of Anderson's proceeding would have been different

United States District Court

For the Northern District of California

1    had trial counsel renewed Anderson's severance motion.  *See id.* (petitioner must show "there is a

2    reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

3    would have been different.").

4         Habeas relief is not warranted for this claim.  *Id.* at 687.

5         3.      Ineffective Assistance of Appellate Counsel

6         Anderson claims that her appellate counsel's failure to raise an ineffective assistance of trial

7    counsel claim based on the above issues constituted a denial of Anderson's constitutional right to

8    effective assistance of counsel on appeal.  Petition at 16.  In Anderson's opening brief on direct

9    appeal, Anderson's appellate counsel did not raise an ineffective assistance claim based on trial

10   counsel's failure to object to the trial court's limitation on the IPB evidence.  *Anderson*, 2003 WL

11   22977571 at *6.  The state appellate court reached the issue, however, and held that Anderson had

12   demonstrated neither incompetence nor prejudice in trial counsel's decision to introduce the IPB

13   evidence only with respect to the adoptive admissions issue.  *Id.* at 7 n. 5.  As discussed, the

14   appellate court found that the IPB evidence was not admissible for any of the other purposes

15   asserted by Anderson on appeal.  *Id.*  On appeal, Anderson did not raise an ineffective assistance of

16   counsel claim based on trial counsel's failure to renew Anderson's severance motion, and

17   consequently, the appellate court did not reach the issue.

18        The due process clause guarantees the right to effective assistance of counsel on a

19   defendant's first appeal.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

20   assistance of appellate counsel are reviewed under the same standard articulated in *Strickland.  See*

21   *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  The petitioner must first demonstrate that counsel's

22   performance was objectively unreasonable, which in the appellate context means that the petitioner

23   must show that counsel acted unreasonably in failing to discover and brief a worthwhile issue.  *Id.* at

24   285-286.  The petitioner must then show prejudice, which in the appellate context means that she

25   must show a reasonable probability that but for appellate counsel's failure to raise an issue, she

26   would have prevailed on appeal.  *Id.* Appellate counsel does not have a constitutional duty to raise

27   every nonfrivolous issue requested by defendant.  *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

28

United States District Court
For the Northern District of California

1    In determining whether appellate counsel's failure to raise a claim of ineffective assistance of

2    trial counsel was objectively unreasonable and prejudicial, the federal habeas court must first

3    address the merits of the underlying claim that trial counsel's performance was deficient.

4    *Moormann v. Ryan,* 628 F. 3d 1102, 1106-7 (9th Cir. 2010).  If the federal court determines that trial

5    counsel's performance was not objectively unreasonable or did not prejudice the petitioner, then

6    appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective

7    assistance of counsel, and the petitioner could not be prejudiced by appellate counsel's decision.  *Id.*

8    Habeas relief is not warranted here, because as discussed above, Anderson has not

9    demonstrated that trial counsel's performance underlying this claim was deficient nor that it resulted

10   in prejudice.  Anderson, thus, cannot show that her appellate counsel's performance was either

11   constitutionally deficient or that it caused prejudice.  *See Strickland*, 466 U.S. at 687.

12       4.    California Penal Code Section 1473.5

13   Anderson lastly claims that her right to equal protection requires that California Penal Code

14   section 1473.5 be applied to her case.  California Penal Code section 1473.5(a) provides that a writ

15   of habeas corpus may be prosecuted in California state court "on the basis that expert testimony

16   relating to intimate partner battering and its effects, within the meaning of Section 1107 of the

17   Evidence Code, was not received in evidence at the trial court proceedings relating to the prisoner's

18   incarceration, and is of such substance that, had it been received in evidence there is a reasonable

19   probability, sufficient to undermine confidence in the judgment of conviction, that the result of the

20   proceedings would have been different."  Cal. Pen. Code § 1473.5(b).  By its express terms, section

21   1473.5(b) only applies to violent felonies that were committed before August 29, 1996.  Cal. Pen.

22   Code § 1473.5(b).

23   Anderson's claim that the *state* habeas courts should have applied section 1473.5 is not

24   cognizable in a federal habeas proceeding.  *See Ortiz v. Stewart*, 149 F. 3d 923, 939 (9th Cir. 2000)

25   (alleged procedural errors in a state post-conviction review process are not cognizable in federal

26   habeas proceedings); *see also Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2011) (the

27   Constitution does not compel states to provide post-conviction proceedings for relief); *Alspaw v.

28   Miller*, No. C-11-1144 SI, 2011 U.S. Dist. LEXIS 109884, at *6 (N.D. Cal. Sep. 27, 2011) (finding

United States District Court

For the Northern District of California

1   that there is "no federal due process claim based on the state appellate court's decision in the §

2   1473.5 habeas proceeding").  The application of section 1473.5 to Anderson's case is a question of

3   state law and is not cognizable on federal habeas review.  *See Alspaw*, 2011 U.S. Dist. LEXIS

4   109884 at \*6 (citing *Swarthout v. Cooke*, 562 U.S. 216, 131 S. Ct. 859, 862 (2011)).

5         Even if Anderson's claim regarding the deficiency of the state habeas proceeding were

6   cognizable, it fails on the merits.  Section 1473.5(a) provides that a writ of habeas corpus may be

7   prosecuted in state court where "competent and substantial" expert testimony relating to IPB and its

8   effects was *not* presented at trial.  In Anderson's case, expert testimony relating to IPB and its

9   effects *was* presented at trial, and the record indicates that it was both competent and substantial.

10   *See* RT 844-856 (direct examination), 856-65 (cross examination).

11         Anderson argues otherwise, contending that the expert testimony presented at her trial was

12   neither competent nor substantial because the expert, Sheri Johnson, "consciously censored the

13   information she was providing."  Petition at 44.  Anderson does not argue that the expert "censored"

14   her testimony because of the court's limitation of the IPB evidence, but rather, because Johnson

15   "was informed by defense counsel before taking the witness stand that she must limit both the

16   amount of time and the scope of her testimony."  *Id.*  But Anderson does not point to anything in the

17   record to suggests that defense counsel told Johnson to limit her testimony or that Johnson did not

18   have sufficient time during direct examination and cross examination to explain IPB and its effects,

19   "including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions,

20   or behavior of victims of domestic violence."  Cal. Evid. Code § 1107(a); *see* RT 844-856.

21         In any case, Anderson is not similarly situated for equal protection purposes to individuals

22   covered by California Penal Code section 1473.5.  *See City of Cleburne v. Cleburne Living Ctr.*, 473

23   U.S. 432, 439 (1985).  Section 1473.5 only applies to violent felonies committed before August 29,

24   1996.  Cal. Pen. Code § 1473.5(b).  As Anderson recognizes, section 1473.5 was passed for the

25   benefit of battered defendants who were convicted prior to the enactment of California Evidence

26   Code section 1107 in 1991, and the California Supreme Court's decision in *People v. Humphrey*, 13

27   Cal. 4th 1073 (Cal. Ct. App. 1996), which allowed for the admission of expert testimony concerning

28   intimate partner battering and its effects.  *See In re Walker*, 147 Cal. App. 4th 533, 538 (Cal. Ct.

United States District Court

For the Northern District of California

1  App. 2007).  Prior to that, IPB evidence was not routinely admitted.  Anderson was convicted in

2  2002.  Unlike individuals convicted before 1996, Anderson did not need the benefit of section

3  1473.5, because she was able to, and actually did, present IPB evidence at her trial.  Thus, she was

4  not similarly situated to those to whom section 1473.5 applied.  Accordingly, habeas relief is not

5  warranted on her equal protection claim.

6  **IV.**   **CONCLUSION**

7      Because Anderson is not in custody "in violation of the Constitution or laws and treaties of

8  the United States," her petition for writ of habeas corpus is denied.  28 U.S.C. § 2254(a).

9      A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in

10  which "reasonable jurists would find the district court's assessment of the constitutional claims

11  debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

12

13      IT IS SO ORDERED.

14

15  Dated:  April 14, 2015

16      _____

17      EDWARD M. CHEN
    United States District Judge

18

19

20

21

22

23

24

25

26

27

28